# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHAOBO WANG, derivatively on behalf of FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., <br><br> Plaintiff, <br><br> v. <br><br> CARSTEN BREITFELD, ZVI GLASMAN, JORDAN VOGEL, AARON FELDMAN, YUETING JIA, MATTHIAS AYDT, EDWIN GOH, BRIAN KROLICKI, LEE LIU, SUSAN SWENSON, SCOTT VOGEL, JIAWEI WANG, and QING YE, <br><br> Defendants, <br><br> and <br><br> FARADAY FUTURE INTELLIGENT ELECTRIC INC. f/k/a PROPERTY SOLUTIONS ACQUISITION CORP., <br><br> Nominal Defendant. | Case No.: <br><br> **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Shaobo Wang ("Plaintiff"), by and through his counsel, derivatively on behalf of nominal defendant Faraday Future Intelligent Electric Inc. ("Faraday Future," "FF," or the "Company") f/k/a Property Solutions Acquisition Corp. ("PSAC") submits this Verified Shareholder Derivative Complaint ("Complaint") against certain current and former officers and directors of the Company (collectively defined herein as the "Individual Defendants"), and alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which included, *inter alia,* review and analysis of: (i) regulatory filings submitted by FF to the U.S. Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by FF; (iii) a securities class action lawsuit filed in the United States District Court for the Central District of California captioned *Faraday Future*

*Intelligent Electric Inc. f/k/a Property Solutions Acquisition Corp.*, Case No. 2:21-cv-09914 (the "Securities Class Action") alleging violations of the anti-fraud provisions of the federal securities laws based on the alleged issuance of false and misleading statements of material fact, and the alleged omission to state material facts necessary to make other statements made not misleading, from January 28, 2021 through November 15, 2021 (the "Relevant Period"); and (iv) other publicly available information, including court filings and media and analyst reports, concerning FF.

## NATURE OF THE ACTION

1.      This is a shareholder derivative action brought by Plaintiff on behalf of nominal defendant FF against certain current and former officers and members of the Company's Board of Directors (the "Board").

2.      Faraday Future claims it designs and engineers next-generation smart electric connected vehicles. PSAC was a special purpose acquisition company ("SPAC"). A SPAC is a company that has no commercial operations and is formed strictly to raise capital through an initial public offering ("IPO") or for the purpose of acquiring or merging with an existing company.

3.      On January 28, 2021, PSAC and FF Intelligent Mobility Global Holdings Ltd. ("Legacy FF") announced that the two companies had entered into a definitive agreement for a business combination, and that the combined company would be renamed Faraday Future (the "Business Combination").

4.      On June 24, 2021, PSAC filed a proxy statement/consent solicitation statement/prospectus with the SEC (the "Proxy Statement" or "Proxy"), in which the PSAC board of directors and Legacy FF's board of directors solicited their respective shareholders for approval of the Business Combination. Shareholders of both companies approved the Business

Combination, which closed on July 21, 2021, and FF's common stock and warrants started trading on the NASDAQ on July 22, 2021 under the ticker symbols FFIE and FFIEW, respectively.

5.      Unbeknownst to investors and the public, throughout the Relevant Period, the Individual Defendants caused the Company to make false and misleading statements and failed to disclose that: (i) Faraday Future had assets in China that were frozen by courts; (ii) a significant percentage of the Company's deposits for future deliveries were attributable to a single undisclosed affiliate; (iii) Faraday Future's cars were not as close to production as claimed; (iv) as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (v) consequently, the Individual Defendants' positive statements about Faraday Future's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      The truth began to emerge on October 7, 2021, when J Capital Research ("J Capital") issued a report titled "Move Over Lordstown: There's a New EV Scam in Town" (the "Report") alleging, *inter alia*, that after eight years of being in business, the Company was unlikely to ever sell a car, that the Company had "reneged on promises to build factors," was being "sued by dozens of unpaid suppliers", and had failed to disclose that certain assets in China had been frozen by courts.

7.      The Report further alleged that the Company had misled the investing public by claiming its 14,000 deposits for vehicles were fake because 78% of the reservations were made by a single undisclosed entity that was likely an affiliate. Lastly, the Report stated that, contrary to representations by the Individual Defendants, former executives of the Company claimed that its car was nowhere near ready for production.

8.    On November 15, 2021, the hits to investors kept on coming when the Company announced that it was unable to timely file its quarterly report on Form 10-Q for the fiscal period ended September 30, 2021. The Company also announced that the Board had formed a special committee of independent directors (the "Special Committee") to "review allegations of inaccurate disclosures."

9.    On February 1, 2022, the Company announced the findings of the Special Committee's investigation into inaccurate disclosures. Among other findings, the Special Committee concluded that: (1) in connection with the Business Combination, "statements made by certain Company employees to certain investors describing Mr. Jia's role within the Company were inaccurate, and [Defendant] Jia's involvement in the management of the Company post-Business Combination was more significant than what had been represented to certain investors;" (2) "[t]he Company's statements leading up to the Business Combination that it had received more than 14,000 reservations for the FF 91 vehicle were potentially misleading because only several hundred of those reservations were paid, while the others (totaling 14,000) were unpaid indications of interest;" (3) "[c]onsistent with the Company's previous public disclosures regarding identified material weaknesses in its internal controls, the Company's internal controls over financial accounting and reporting require an upgrade in personnel and systems;" and (4) "[t]he Company's corporate culture failed to sufficiently prioritize compliance." As a result of the investigation, the Special Committee recommended certain remedial actions.

10.    The Individual Defendants breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor by knowingly engaging in the deceptions alleged herein. The Business Combination appears to have been a sham designed to enrich Company insiders at the expense of Company shareholders.

11.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties and other violations of law, FF has sustained damages as described below.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (15 U.S.C. § 78n(a)(1)), Rule 14a-9 of the Exchange Act (17 C.F.R. § 240.14a-9), Section 10(b) of the Exchange Act (15. U.S.C. § 78j(b)), and Section 21D of the Exchange Act (15 U.S.C. § 78u-4(f)). Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action based on violations of the Exchange Act.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

14.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

15.     The Court has personal jurisdiction over each of the Defendants because each Defendant is either a corporation incorporated in this District, or he or she is an individual who has minimum contacts with this District to justify the exercise of jurisdiction over them.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1401 because a substantial portion of the transactions and wrongs complained of herein occurred in this District, and the Defendants have received substantial compensation in this District by engaging in numerous activities that had an effect in this District.

17.     Finally, the Amended and Restated Certificate of Incorporation of FF includes an exclusive forum selection clause requiring all derivative actions in which the Court of Chancery

of the State of Delaware does not have subject matter jurisdiction, such as the case here, be brought in this Court.

## PARTIES

**PLAINTIFF**

18.     Plaintiff is a current shareholder of Faraday. Plaintiff has continuously held Faraday common stock at all relevant times.

19.     Faraday is a Delaware corporation with its principal executive offices at 18455 S. Figueroa Street, Gardena, CA 90248.

20.     Defendant Carsten Breitfeld ("Breitfeld") has served as FF's Global Chief Executive Officer ("CEO") since September 2019 and is a member of the Board. Breitfeld was the CEO of Legacy FF prior to the Business Combination, and the CEO of Faraday Future after the Business Combination. Per the Proxy Statement, Defendant Breitfeld is a manager of FF Global Partners LLC ("FF Global"). FF Global controls Pacific Technology Holding LLC ("Pacific Technology") which indirectly holds approximately 29.1% of FF's share capital. The members and managers of FF Global are treated as "partners" or "preparatory partners" from FF 's internal governance perspective. FF Global is managed by its executive committee (the "FF Global Executive Committee"), which currently consists of eight managers, including Defendant Breitfeld. Per the Proxy, "FF Global, which is governed by an executive committee consisting of eight members, may exert influence over the management of FF through its issuance of equity interests as additional compensation to the management of FF." Defendant Breitfeld is named as a defendant in the Securities Class Action.

21.     Defendant Zvi Glasman ("Glasman") was the Chief Financial Officer ("CFO") of Legacy FF prior to the Business Combination, and the CFO of Faraday Future after the Business

Combination until October 27, 2021. Defendant Glasman is named as a defendant in the Securities Class Action.

22.    Defendant Jordan Vogel ("J. Vogel") was the Chairman and Co-CEO of PSAC from its inception until the Business Combination and is a member of the Board. Defendant J. Vogel is named as a defendant in the Securities Class Action.

23.    Defendant Aaron Feldman ("Feldman") was the Co-CEO and Treasurer of PSAC from its inception until the Business Combination. Defendant Feldman is named as a defendant in the Securities Class Action.

24.    Defendant Yueting Jia ("Jia") founded FF in 2014 and has served as FF's Chief Product and User Ecosystem Officer since September 2019. Defendant Jia is a member of the FF Global Executive Committee and is also named as a defendant in the Securities Class Action. Per the Proxy Statement, Defendant Jia is so intertwined with the Company that he is the face of the Company, and any negative publicity of Defendant Jia affects the Company.  The Company also admitted that Defendant Jia has a history of wrongdoing which resulted in him being unable to hold "a position as director, supervisor or executive officer of public listed companies in China:"

> ***FF's founder, Mr. Yueting Jia (YT Jia), is closely associated with the image and brand of FF. Circumstances affecting YT Jia's reputation, and investor and public perception of his role and influence in FF, may shape FF's brand and ability to do business. Additionally, YT Jia may continue to be subject to certain restrictions in China if not all creditors participating in YT Jia's restructuring plan comply with the requirement to request removal of YT Jia from such restrictions.***

> FF's founder, Mr. YT Jia, has previously been the subject of negative press related to his debts and has significant influence over FF's management and operations. In December 2019, YT Jia was also determined by the Shenzhen Stock Exchange of China to be unsuitable for a position as director, supervisor or executive officer of public listed companies in China as a result of violation by Leshi Information Technology Co., Ltd. ("LeTV"), a public company founded and controlled by YT Jia in China, of several listing rules of Shenzhen Stock Exchange, including procedural non-compliance for the provision of funding and guarantees by LeTV to other affiliated companies founded by YT Jia, discrepancies in LeTV's forecast

and financials, and procedurally improper use of proceeds from LeTV's public offering. Additionally, as the controlling shareholder and the former chairman of LeTV, YT Jia, received a notice from China Securities Regulatory Commission ("CSRC") in April 2021 notifying the CSRC's decision to impose an administrative fine of RMB241.2 million and a permanent ban from entry into the securities market on YT Jia as a result of LeTV's misrepresentation in the registration document of its IPO and its financial statements, fraud in connection with a private placement, and other violations of securities law and listing requirements. In January 2021, YT Jia, as the former executive director and chairman of Coolpad Group Limited (SEHK: 2369) ("Coolpad") received a decision from the Listing Committee of The Stock Exchange of Hong Kong Limited (the "HKSE Listing Committee") that YT Jia and another former executive director of Coolpad had breached their undertakings to the HKSE Listing Committee in connection with Coolpad's failure to comply with the Hong Kong listing rules requirement to timely announce certain disclosable transactions (such as advancement of money, provision of financial assistance, or certain related party transactions) and timely publish its financial results. HKSE Listing Committee determines that YT Jia's retention of office on the board of Coolpad would have been prejudicial to the interests of investors. YT Jia appealed the decision on January 15, 2021.

As the Founder and the Chief Product and User Ecosystem Officer of FF, YT Jia's image will be closely associated with its brand. The media's focus on negative coverage could materially and adversely affect FF's valuation and investors' confidence. Such negative publicity could also solicit inquiries from securities regulatory bodies in the relevant jurisdictions where FF does business. While YT Jia completed a Chapter 11 restructuring plan with respect to his personal debts and claims in June 2020 and received a discharge order on March 4, 2021 with an effective discharge date as of February 3, 2021, according to which all distributions, rights, and treatment that are provided in the plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all claims against the debtor of any nature whatsoever, whether known or unknown, or against the assets or properties of YT Jia that arose before the discharge date, there is no assurance that such negative publicity, although not directly related to FF, would not adversely affect FF's business, prospects, brand, financial condition and results of operations.

Additionally, as a condition for the creditors to receive distribution from the trust established as part of the restructuring plan, creditors are required to request Chinese Courts to remove YT Jia from the list of dishonest judgment debtors ("China Debtor List") and lift any consumption or travel restrictions ("China Restrictions") that are currently imposed on YT Jia by the Chinese courts. As of January 17, 2021, creditors of more than 80% of the total allowed claims in the restructuring plan confirmed submitted such a request to the Chinese courts. However, there may be risks that other holders who had not yet submitted such a request would not submit the request or that the Chinese courts do not approve such a request. If YT Jia cannot be removed from such restrictions, he will not be able to make certain consumptions or actions deemed as "high consumption" which will

nevertheless be necessary for him to work in China, such as taking a plane. If YT Jia cannot be removed from the China Debtor List, in addition to the restriction applies to consumption restriction, he cannot be a director, supervisor or other executive officer of the company in China.

25.     Defendant Matthias Aydt ("Aydt") serves as a member of the Board and previously served as a director of Legacy FF prior to the Business Combination. Defendant Aydt served as Legacy FF's Senior Vice President of Business Development and Product Definition since November 2019. Defendant Aydt has served in various leadership roles at FF, including Senior Vice President of Product Execution, Vice President of Vehicle Engineering and Vehicle Chief Engineer, and Head of Hardware Architecture. Defendant Aydt is a member of the FF Global Executive Committee.

26.     Defendant Edwin Goh ("Goh") has served as a member of the Board since the Busines Combination.

27.     Defendant Brian Krolicki ("Krolicki") is Chairman of the Board. Defendant Krolicki sat on the advisory board of FF from June 2019 to April 2020 and has been a director of FF since May 2020.

28.     Defendant Lee Liu ("Liu") has served as a member of the Board since the Business Combination.

29.     Defendant Susan Swenson ("Swenson") has served as a member of the Board since the Business Combination.  Defendant Swenson served as Executive Chairman of the Special Committee's investigation.

30.     Defendant Scott Vogel ("S. Vogel") has served as a member of the Board since the Business Combination. Defendant S. Vogel is the brother of Defendant J. Vogel.

31.     Defendant Qing Ye ("Ye") is as a member of the Board and also serves as FF's Vice President of Business Development.

32.     Defendant Jiawei Wang ("Wang") served as the Company's Vice President, Global Capital Markets until he was suspended without pay per the investigation of the Special Committee. He is the nephew of Defendant Jia.

33.     Defendants Goh, Swenson, and S. Vogel are sometimes referred to herein as the "Audit Committee Defendants."

34.     Defendants Breitfeld, Aydt, Goh, Krolicki, Liu, Swenson, J. Vogel, S. Vogel, and Ye are sometimes referred to herein as the "Director Defendants."

35.     Defendants Breitfeld, Glasman, J. Vogel, Feldman, Jia, Aydt, Goh, Krolicki, Liu, Swenson, S. Vogel, Wang, and Ye are referred to herein as the "Individual Defendants."

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

36.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

37.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

38. To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company. By virtue of such duties, the officers and directors of FF were required to, among other things:

a. ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

b. conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c. properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

d. remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

e. ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

39.    Each Individual Defendant, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith, and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its stockholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

40.    The Company has adopted a Code of Conduct and Ethics (the "Code") that applies to all employees, including officers and members of the Board. The Code states, in part:

> The purpose of this Code is to deter wrongdoing and to promote: (i) honest and ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships, (ii) full, fair, accurate, timely and understandable disclosure in our Securities and Exchange Commission reports and other public communications, (iii) compliance with applicable laws, rules and regulations, (iv) prompt internal reporting of violations of this Code to appropriate persons identified in this Code and (v) accountability for adherence to this Code.

41.    The Code goes on to state:

**Conflicts of Interest**

Company Personnel and directors are expected to dedicate their best efforts to the business of the Company and to avoid any conflicts with the interests of the Company.

*       *       *

**Company Books and Records**

All Company documents must be completed accurately, truthfully and in a timely manner, including all travel and expense reports. When applicable, documents must be properly authorized. The Company's financial activities must be recorded in compliance with all applicable laws, regulations, contract terms and conditions, and accounting practices. The making of false or misleading entries, records or documentation is strictly prohibited. Company Personnel and directors must never

create a false or misleading report or make a payment or establish an account on behalf of the Company with the understanding that any part of the payment or account is to be used for a purpose other than as described by the supporting documents.

*    *    *

**Internal Accounting Controls and Procedures for Financial Reporting**

The Company's policy is to maintain a system of internal accounting controls to ensure reliability and adequacy of the Company's books and records and proper recording of all transactions including dispositions of assets. The Company has adopted and implemented internal accounting controls, procedures and records to ensure, among other things, the flow of information from all levels of the Company to the Company's Chief Financial Officer and the Chief Executive Officer. Full, fair, accurate, timely and understandable disclosure is required in all financial reports of the Company.

42.    Additionally, per FF's Audit Committee Charter, during the Relevant Period the purpose of the Audit Committee was to "assist the Board in its oversight of the Company's accounting and financial reporting processes and the audit of the Company's financial statements."

43.    Pursuant to the Audit Committee Charter, the Audit Committee Defendants had the following responsibilities, *inter alia:*

- Meet to review and discuss the annual audited financial statements and quarterly financial statements with management and the Independent Auditor, including the disclosures under the caption 'Management's Discussion and Analysis of Financial Condition and Results of Operations." The Committee shall make a recommendation to the Board as to whether the annual audited financial statements should be included in the Company's Annual Report on Form 10-K.

- Review the Company's financial reporting processes and internal controls, based on consultation with the Independent Auditor and Internal Audit. Such review shall include a consideration of major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles, and major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of identified deficiencies. Review any analyses prepared by management and/or the Independent Auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial

statements, including analyses of the effects of alternative GAAP methods on the financial statements.

- Review annually the effect of legal, regulatory and accounting initiatives on the Company's financial statements.

- Review and assess the annual internal audit plan, the process used to develop the plan and the status of activities, significant findings, recommendations and management's response. Monitor ongoing Internal Audit activities by reviewing and discussing with management reports and other communications prepared by Internal Audit.

- Discuss policies with respect to risk assessment and risk management, information technology and cyber security risks, the Company's major litigation and financial risk exposures and the steps management has taken to monitor and control such exposures, it being understood that it is the job of management to assess and manage the Company's exposure to risk and that the Committee's responsibility is to discuss guidelines and policies by which risk assessment and management are undertaken.

- Review periodically with the Company's chief legal officer, or appropriate delegates, the Company's compliance with legal and regulatory requirements.

## SUBSTANTIVE ALLEGATIONS

**BACKGROUND**

44.    Faraday Future is an American start-up technology company focused on the development of electric vehicles.

45.    PSAC was a SPAC formed for the purpose of effecting a merger.

46.    On January 28, 2021, Legacy FF and PSAC announced their intention to enter into the Business Combination which was achieved on July 21, 2021.

47.    The Business Combination was effected for the purpose of enriching Company insiders, particularly Defendant Jia, at the expense of Company stockholders. Indeed, per the Proxy, a fairness opinion was not even obtained in connection with the Business Combination. According to the Report, "'Jia and other related parties already cashed out $68.7 mln 'in

14

conjunction with the closing' of the SPAC merger on July 21, 2021.  We don't doubt he needs it—Jia at one time claimed $6.6 bln in personal debt."'

**THE INDIVIDUAL DEFENDANTS CAUSE THE COMPANY**
**TO FILE FALSE AND MISLEADING STATEMENTS**

48.     During the Relevant Period, the Individual Defendants caused FF to make materially false and misleading statements that concealed issues with Legacy FF and the resulting implications for the Business Combination and the Company.

49.     On January 28, 2021, PSAC and Legacy FF issued a press release titled "Faraday Future to List on NASDAQ Through Merger With Property Solutions Acquisition Corp. With Estimated $1 Billion in Proceeds." In the press release, PSAC and Legacy FF announced the Business Combination. The press release stated, in relevant part:

> This transaction validates FF's vision to create a mobility ecosystem built upon innovations in technology and products. FF's flagship product offering will be the FF 91, featuring industry leading 1,050 HP, 0-60 mph in less than 2.4 seconds, zero gravity seats with the largest 60-degree reclining angles and a revolutionary user experience designed to create a mobile, connected, and luxurious third Internet living space. FF 91 is targeted to launch within twelve months after closing of the merger.
>
> Commenting on today's significant milestones, Faraday Future's Global Chief Executive Officer, Dr. Carsten Breitfeld said, "We are excited to enter into this partnership with PSAC. This is an important milestone in our company's transformation, one that we achieved with strong commitment from our employees, suppliers, and partners in the U.S. and China, as well as the city of Hanford, California. I am excited that this business combination will allow us to launch the class defining FF 91, building upon the founder's original vision to help our users and shareholders take part in shaping the future of mobility."
>
> "Faraday Future is a unique and differentiated electric vehicle company with significant growth prospects for the future," said Property Solutions Co-CEO and Chairman Jordan Vogel. "We believe the excellent management team, led by Dr. Breitfeld, and industry-leading technology will allow Faraday Future to reach its true growth potential."
>
> FF has invested over $2 billion dollars since its inception. In addition to the development of its first model FF 91, the product definition of the second model FF 81 has been completed, and the R&D work is progressing.

*** 

FF's B2C passenger vehicle launch pipeline over the next five years includes FF 91 series, FF 81 series, and FF 71 series. FF 91 will define the FF brand DNA. This DNA will carry over to subsequent premium mass market vehicles in the portfolio - the FF 81, and FF 71. With such brand DNA, FF products are expected to be ahead of the competition in their respective segments in terms of their design, driving experience, interior comfort, connectivity, and user experience. FF 81 is expected to launch in 2023, and FF 71 in 2024. In addition to passenger vehicles, FF plans to launch a Smart Last Mile Delivery ('SLMD') vehicle in 2023 leveraging its proprietary VPA. To implement a capital light business model, FF has adopted a global hybrid manufacturing strategy consisting of its refurbished manufacturing facility in Hanford, California and collaboration with a leading contract manufacturing partner in South Korea. The company is exploring the possibility of additional manufacturing capacity in China through a joint venture.

As the world's only tech-luxury intelligent Internet electric vehicle brand, FF expects to sell more than 400,000 units cumulatively over the next five years, and its first flagship model, the FF 91, has received over 14,000 reservations.

50.    On March 19, 2021, the Company filed a transcript with the SEC that contained a

question-and-answer ("Q&A") session with IPO Edge.  In the Q&A, the Company stated:

FF has the most exciting growth opportunity ahead in the EV market. The transaction is expected to fully fund the production of our flagship halo vehicle, the luxury electric FF 91, within 12 months of close. The FF 91 is scheduled to launch in 2022, making our market disrupting product a relatively near-term reality. Our technology has been tested by the world's leading experts, who believe we have an edge that can transform the market with unparalleled performance. FF is led by a world-class management team with deep automotive, software, and internet experience.

We have existing demand for the FF 91 by way of more than 14,000 reservations, and a strong strategy to scale in the US and China. The strong signal we are seeing from China significantly expands the opportunity ahead for FF, evidenced by the fact that we have a Tier 1 city and a top three Chinese OEM participating in the PIPE financing. These strategic partners will help establish FF's presence in the Chinese market, further solidifying FF's unique US-China dual home market strategy.

51.    On April 5, 2021, PSAC filed its  registration statement on Form S-4 with the SEC

(the "Registration Statement"). The Registration Statement stated, in part:

FF intends to commercially launch FF 91 series within twelve months after closing of the Business Combination. Toward that goal, FF has completed most of the

16

vehicle development milestones, including 29 prototype and 13 pre-production assets. FF 91 series is designed to compete with Maybach, Bentley Bentayga, Lamborghini Urus, Ferrari Purosangue, Mercedes S-Class, Porsche Taycan, BMW 7-Series etc.

***

FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination. FF has completed 29 prototypes and 13 pre-production assets and has completed most of the vehicle development hurdles including feasibility, concept and development phases. As of the date hereof, 94% of the key components for FF 91 have been sourced, 91% production tooling is complete and 75% of production equipment is complete.

52.    On June 24, 2021, the Company filed the Proxy Statement with the SEC, which contained material misstatements and omissions, and solicited stockholder approval of the Business Combination.

53.    According to the Proxy Statement:

FF has achieved major commercial milestones to bring its FF 91 model to the market. Unlike many competitors, FF has the advantage of speed to market as it is positioned to launch a production try-out in 9 months and commercial production of FF 91 series within 12 months after the Business Combination.

54.    The Proxy Statement also stated the following regarding the Board's duties, including its risk management oversight:

New FF's board of directors will oversee the risk management activities designed and implemented by management. New FF's board of directors will execute its oversight responsibility both directly and through its committees. New FF's board of directors will also consider specific risk topics, including risks associated with its strategic initiatives, business plans and capital structure. New FF's management, including its executive officers, is primarily responsible for managing the risks associated with the operation and business of the company and will provide appropriate updates to the board of directors and the audit committee. New FF's board of directors will delegate to the audit committee oversight of its risk management process, and its other committees will also consider risk as they perform their respective committee responsibilities. All committees will report to the board of directors as appropriate, including when a matter rises to the level of material or enterprise risk.

55.     The Proxy Statement further stated the following responsibilities of the Audit Committee Defendants:

> The purpose of the audit committee will be, among other things, to appoint, retain, set compensation of, and supervise New FF's independent registered public accounting firm, review the results and scope of the audit and other accounting related services and review New FF's accounting practices and systems of internal accounting and disclosure controls.

56.     The Proxy Statement was materially misleading because it failed to disclose that: (1) the Company had assets in China frozen by courts, (2) a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) the Company's cars were not as close to production as the Company claimed; (4) as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

57.     As a result of the material misstatements and omissions contained in the Proxy Statement, Company shareholders voted to elect Defendants Aydt, Breitfeld, Krolicki, J. Vogel, Ye, Goh, Liu, Swenson, and S. Vogel to the Board, despite their breaches of fiduciary duties. Furthermore, as a result of the material misstatements and omissions in the Proxy Statement, Company stockholders approved the Business Combination.

58.     On September 19, 2021, the Company published a "919 Futurist Day Presentation." In the presentation materials, the Company stated:

> The transaction is expected to fully fund the production of class-defining performance luxury electric FF 91 within 12 months of transaction close. This transaction also supports the future development of the Company's unique I.A.I (Internet, Autonomous Driving, Intelligence) system.

59.    The presentation materials further stated that "Faraday Future's advanced manufacturing and factory operations teams have made significant progress with the support of our equipment suppliers in preparing the Hanford factory for the launch of the FF91."

60.    The statements referenced in ¶¶ 49-55, 58-59 were materially false and misleading because the Individual Defendants failed to disclose, *inter alia*, that: (1) the Company had assets in China frozen by courts, (2) a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) the Company's cars were not as close to production as the Company claimed; (4) as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**TRUTH BEGINS TO EMERGE**

61.    The truth began to emerge on October 7, 2021, when J Capital published the Report. The Report alleged, *inter alia*, that Faraday Future was unlikely to ever sell a car, noting that after eight years in business, the Company has "failed to deliver a car," "has reneged on promises to build factories in five localities in the U.S. and China," "is being sued by dozens of unpaid suppliers," and "has failed to disclose that assets in China have been frozen by courts."

62.    Moreover, the Report alleges that Faraday Future's claimed 14,000 deposits are fabricated because 78% of these reservations were made by a single undisclosed company that is likely an affiliate. The Report further alleges that contrary to representations of progress toward manufacturing made by Faraday Future in September 2021, former engineering executives did not believe that the car was ready for production. The Report stated:

> We don't think Faraday Future (FFIE), an EV SPAC, will ever sell a car. So far,
> it's nothing but a bucket to collect money from U.S. investors and pour it into the

black hole of debt created by its founder, China's best-known securities fraudster, Jia Yueting.

After eight years in business, FFIE has failed to deliver a car and is yet again saying "next year." The company has reneged on promises to build factories in five localities in the U.S. and China and repeatedly delayed the sixth. FFIE is being sued by dozens of unpaid suppliers and has failed to disclose that assets in China have been frozen by courts. And Jia appears to be running the company behind the scenes.

Given the current bubble environment, FFIE nevertheless managed to raise about $1 bln from U.S. investors via PIPEs and SPAC merger in July. Now it promises to restart its abandoned factory in Hanford, California and mass- produce cars in just seven months. We doubt that timeline will hold: three recent visits to the factory showed little activity, and company formers told us there are still engineering problems to work out.

FFIE is the malformed lovechild of the imperiled Chinese real estate developer Evergrande (3333 HK) and Jia, China's fugitive default king. We expect Evergrande, which owns 20.5% of this company and stands to gain more equity, to sell off its shares as soon as the lockup period ends, in January 2022 if not, quietly, before that.

In January 2021, the company claimed it had 14,000 reservations for the car—until one week after Hindenburg published its findings that Lordstown's orders were faked. Without explanation, after March 19, FFIE no longer made reference to the number of reservations.2 In fact, these reservations--78% of which were from a single company—had been converted in 2020 to a note payable earning 8% interest. The company strongly implies that the mystery booker, who was apparently ready to spend well over $1 bln on FFIE cars, may be an "affiliate." They fail to say who it was. In H1 2021, despite the upcoming SPAC merger, FFIE took in just $144,000 in new customer deposits.

*          *          *

On September 20, 2021, the company issued a new presentation claiming progress toward manufacturing. But former engineering executives we interviewed did not believe that the car was ready for production. FFIE's contention that it needed just $90 mln to start mass production in seven months is "not even in the ballpark of true," said one formerly highly placed executive. Another former executive said, "The story with the SPAC is that they just needed money to manufacture, but I think there are still some critical engineering issues."

Chinese government reports show that in 2016, FFIE's subsidiary LeSee put $154 mln into the company's largest planned manufacturing site, in China's Zhejiang Province, but we visited the location and found nothing but an overgrown field. The

area is so deserted that even the police station in what was intended to be the Faraday factory park has closed.

*    *    *

Jia Yueting, FFIE founder, has been banned for life from being associated with publicly listed companies in China. FFIE admits in its "risks" section that he has "illegally" provided funding and guarantees to affiliated companies, improperly diverted proceeds from the public offering of a company he controlled, and lied to Chinese regulators and investors. In Hong Kong, where he was chairman of the long-halted Coolpad Group Limited (2369 HK), he failed to disclose key transactions.

Holding the title "Partner, Chief Product & User Ecosystem Officer," Jia still controls key spending decisions at FFIE through the FF Global Executive Committee. Because of him, FFIE's USD accounts in China have been frozen by regulators. In a lawsuit against FFIE, the company's former General Counsel Hong Liu claimed that a Jia "clique" controlled the company regardless of legal commitments.

*    *    *

In the current overheated EV environment, the company appears to be having difficulty finding talent. In September, FFIE announced new executives: one from Lordstown—the company an FFIE former said "is setting new standards for fraud"--and two from Karma, a moribund company that the auto news site Jalopnik claims may have faked prototypes. One of the Karma graduates is an ex-vice president of A123 Systems, a formerly U.S.-listed Chinese company that has been sued multiple times for patent infringement and securities fraud.

63.     The Report, while slamming Defendant Jia's history of wrongdoing, also said the following regarding Defendant Breitfeld:

Embarrassed by Jia, FFIE hired a "professional" CEO in September 2019, but his track record in Chinese EVs is not much better. Carsten Breitfeld was co-founder of Nanjing-based Byton, which owed suppliers and employees millions of dollars when it stopped operating in 2020. He conveniently omits from his bio in the prospectus his ill-fated tenure as CEO of another Chinese EV hopeful called Iconiq, which raised over ¥1.2 bln before going silent. He gets tepid reviews from formers.

64.     On this news, the price per share of the Company's common stock fell $0.35, or approximately 4.2%, from its closing price on October 6, 2021, to close at $8.05 per share on October 8, 2021.

65.    On November 2, 2021, the Company announced that Defendant Glasman had resigned as CFO of the Company effective October 27, 2021 and Walter McBride was being appointed to CFO. In a press release announcing these changes, the Company stated, "Mr. McBride succeeds Zvi Glasman, who resigned as CFO of the company to pursue other opportunities." The press release was also attached to a Form 8-K filed with the SEC that stated, "Mr. Glasman's departure from the Company is not a result of any disagreement with the Company's independent auditors or any member of management on any matter of accounting principles or practices, financial statement disclosure, or internal controls."

66.    The statements referenced in the foregoing paragraph were materially false and misleading, and failed to disclose material facts necessary to make the statements not false and misleading. Specifically, the Individual Defendants improperly failed to disclose, *inter alia*, that: (1) as a result of the materially false and misleading statements discussed herein, the Company could not timely file its quarterly report for the fiscal period ended September 30, 2021; and (2) the Company failed to maintain adequate internal controls. As a result, Faraday's public statements were materially false and misleading at all relevant times.

67.    On November 15, 2021, the Company issued a press release titled "Faraday Future Provides Business Update." The Company disclosed that it could not timely file its quarterly report on Form 10-Q for the fiscal period ended September 30, 2021. The press release also stated that the Board had "formed a special committee of independent directors to review allegations of inaccurate disclosures," including the claims in the Report. The press release stated, in relevant part:

> Faraday Future Intelligent Electric Inc. ("Faraday Future" or the "Company") (NASDAQ: FFIE), a California-based global shared intelligent electric mobility ecosystem company, filed a Form 12b-25 notifying the SEC that it is unable to file its Form 10-Q for the fiscal quarter ended September 30, 2021 within the prescribed

time period, and does not expect to file it by the extended filing date pursuant to Rule 12b-25. The Company is also unable to file its amended Registration Statement on Form S-1 (File No. 333-258993) (the "Form S-1/A") at this time.

The Company's Board of Directors formed a special committee of independent directors to review allegations of inaccurate disclosures, including claims made in a report issued by an investor with a history of seeking to drive down public companies' stock prices for its own benefit. Faraday Future seeks to do business in the most ethical and transparent way. As a new public company, the Board, as part of its review, is seeking to ensure that the Company is adhering to the highest standards of conduct.

The special committee's review is ongoing, and it is working diligently with independent counsel and advisors to complete its review as soon as possible. The Company is committed to working with the special committee to complete its work in order to re-establish timely financial reporting as soon as feasible. Until the review is complete, the Company is not able to file its Form 10-Q or Form S-1/A.

68. On this news, the price of the Company's common stock fell $0.28, or approximately 3.2%, from its closing price of $9.11 on November 15, 2021, to close at $8.83 per share on November 16, 2021.

69. On February 1, 2022, the Company issued a press release announcing the results of the Special Committee's investigation. The press release stated that the following remedial actions had been implemented by the Board in connection with the investigation:

In connection with the completion of the previously disclosed investigation by the special committee of independent directors (the "Special Committee") of Faraday Future Intelligent Electric Inc. (the "Company") described under Item 8.01 below, on January 26, 2022, the Special Committee approved, and on January 31, 2022, the Board of Directors of the Company (the "Board") approved and ratified (among other items) the following remedial actions to enhance oversight and corporate governance, effective immediately:

● The appointment of Susan Swenson, currently an independent member of the Board, to the newly created position of Executive Chairperson of the Company. In light of Ms. Swenson's assumption of the role of Executive Chairperson, Ms. Swenson will step down from the Audit and Compensation Committees of the Board;

● Carsten Breitfeld, the Company's Chief Executive Officer, and Yueting (YT) Jia, the Company's founder and Chief Product & User Ecosystem Officer, will report directly to Ms. Swenson and each will receive a 25% annual base salary reduction;

- The appointment of Jordan Vogel as Lead Independent Director;

- In light of the new leadership structure, Brian Krolicki will step down from his role as Chairman of the Board and Chair of the Nominating and Corporate Governance Committee and become a member of the Audit and Compensation Committees of the Board, and Jordan Vogel will step down from the Nominating and Corporate Governance Committee;

- Scott Vogel will become Chair of the Audit Committee and the Nominating and Corporate Governance Committee of the Board; and

- Jiawei (Jerry) Wang, the Company's Vice President, Global Capital Markets, will be suspended without pay until further notice in connection with the matters referenced below, effective immediately.

70.    The press release further disclosed that the Special Committee made the following findings:

- In connection with FF Intelligent Mobility Global Holdings Ltd.'s July 2021 business combination with Property Solutions Acquisition Corp. (the "Business Combination"), statements made by certain Company employees to certain investors describing Mr. Jia's role within the Company were inaccurate, and Mr. Jia's involvement in the management of the Company post-Business Combination was more significant than what had been represented to certain investors.

- The Company's statements leading up to the Business Combination that it had received more than 14,000 reservations for the FF 91 vehicle were potentially misleading because only several hundred of those reservations were paid, while the others (totaling 14,000) were unpaid indications of interest.

- Consistent with the Company's previous public disclosures regarding identified material weaknesses in its internal controls, the Company's internal controls over financial accounting and reporting require an upgrade in personnel and systems.

- The Company's corporate culture failed to sufficiently prioritize compliance.

71.    On March 31, 2021, the Company filed a Form 8-K disclosing that subsequent to the February 1, 2021 Form 8-K, "the Company, certain members of the management team and employees of the Company received a notice of preservation and subpoena from the staff of the SEC stating that the SEC had commenced a formal investigation relating to the matters that were

the subject of the Special Committee investigation. The Company, which had previously voluntarily contacted the SEC in connection with the Special Committee investigation, is cooperating fully with the SEC's investigation."[1]

72.    As of the filing of this complaint, FF is still delinquent in filing its financial statements, filing a FORM 12b-25 on March 31, 2021 that stated that the Company is "unable, without unreasonable effort or expense, to file its Annual Report on Form 10-K for the year ended December 31, 2021."

## DAMAGES TO FARADAY

73.    As a direct and proximate result of the Individual Defendants' misconduct, Faraday has lost and will continue to lose and expend many millions of dollars.

74.    Such expenditures include, but are not limited to:

- costs and fees associated with the Securities Class Action, the internal investigation by the Special Committee, and the SEC investigation;

- costs related to the Company being unable to file its financial statements and compensation given to the Individual Defendants while they were breaching their fiduciary duties; and

- costs and expenses associated with the sham Business Combination that was designed to enrich Company insiders, including Defendant Jia.

75.    As a direct and proximate result of the Individual Defendants' conduct, Faraday has also suffered and will continue to suffer a loss of reputation and goodwill, and a "liar's discount" that will plague the Company's stock in the future due to the Company's and their

---

[1]  The investigation by the SEC will be referred to herein as the "SEC's investigation."

misrepresentations and the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

## DERIVATIVE AND DEMAND ALLEGATIONS

76.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

77.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties and other violations of law.

78.     Plaintiff is an owner of FF common stock and was an owner of FF common stock at all times relevant hereto.

79.     Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

80.     As a result of the facts set forth herein, Plaintiff has not made any demand on the FF Board to institute this action against the Individual Defendants. Such a demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

81.     At the time of filing of this action, the Board consists of the following nine individuals: Defendants Breitfeld, Aydt, Goh, Krolicki, Liu, Swenson, J. Vogel, S. Vogel, and Ye. All nine members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

**DEMAND IS FUTILE AS TO DEFENDANTS BREITFELD, AYDT, GOH, KROLICKI, LIU, SWENSON, J. VOGEL, S. VOGEL, AND YE BECAUSE THEY EACH FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

82.     Defendants Breitfeld, Aydt, Goh, Krolicki, Liu, Swenson, J. Vogel, S. Vogel, and Ye all face a substantial likelihood of liability for their individual misconduct. The Director

Defendants were directors during the time of the false and misleading statements, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations made on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

83.     Moreover, the Director Defendants, as directors owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company was acting legally and that its internal controls were sufficiently robust and effective (and were being implemented effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices and led to both the internal investigation by the Company and the SEC's investigation.

84.     The Director Defendants' knowing and conscious authorization of false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith, for which the Director Defendants face a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of FF to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. This is something they will not do. For this reason, demand is futile as to the Director Defendants.

85.     Moreover, Defendants Breitfeld, Krolicki, and Aydt are interested because they served on Legacy FF's Board prior to the Business Combination and Defendant J. Vogel was PSAC's chairman and Co-CEO prior to the Busines Combination. These defendants are incapable of disinterestedly considering the allegations because they were integral in causing the Company to enter into the sham Business Combination, which was consummated to enrich Company insiders, including Defendant Jia, and which is the basis of the false and misleading statements complained of herein.

**DEFENDANT BREITFELD IS NEITHER INDEPENDENT NOR DISINTERESTED**

86.     Defendant Breitfeld, the Company's Global CEO, is not independent. In 2020, he received $2,732,313 in executive compensation, which amount is material to him.

87.     Further, Defendant Breitfeld is a member of the FF Global Executive Committee and therefore lacks independence. Per the Proxy, FF "is governed by an executive committee consisting of eight members [the FF Global Executive Committee], [which] may exert influence over the management of FF through its issuance of equity interests as additional compensation to the management of FF."

88.     Defendant Breitfeld is also incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

**DEFENDANT AYDT AND YE ARE NEITHER INDEPENDENT NOR DISINTERESTED**

89.     Defendant Aydt is the Company's Senior Vice President of Business Development and Product Definition. Pursuant to his retention letter with Faraday Future dated February 25, 2020, Defendant Aydt's base salary is $400,000, and he is eligible to receive a discretionary annual performance bonus (with a target amount of $100,000). Defendant Adyt therefore lacks

independence because the executive compensation which he receives from his executive position is material to him.

90.     Defendant Aydt also lacks independence because he is a member of the FF Global Executive Committee, as described above.

91.     Defendant Aydt is also incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

92.     Defendant Ye is FF's Vice President of Business Development and FF PAR. Pursuant to his offer letter with Faraday Future dated August 27, 2018, Defendant Ye's base salary is $300,000, and he is eligible to receive a discretionary annual performance bonus (with a target amount of $100,000). Defendant Ye therefore lacks independence because the compensation which he receives from his executive position is material to him.

## DEMAND IS EXCUSED AS TO DEFENDANTS GOH, SWENSON, AND S. VOGEL BECAUSE AS MEMBERS OF THE AUDIT COMMITTEE THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY

93.     Defendants Goh, Swenson, and S. Vogel as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements and allowing the Company to repeatedly make other false and misleading statements to the investing public. More specifically, as members of the Audit Committee, the Audit Committee Defendants were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, the Audit Committee Defendants failed to ensure the integrity of the Company's financial statements and financial reporting process, the Company's systems of internal accounting and financial controls, and other financial information provided by the Company, as required by the Audit Committee Charter. For this reason, demand is futile as to the Audit Committee Defendants.

**DEFENDANTS J. VOGEL AND S. VOGEL ARE UNABLE TO CONSIDER
A DEMAND AGAINST ONE ANOTHER**

94.    Defendants J. Vogel and S. Vogel are unable to impartially consider a demand

against one another because they are brothers, per the Proxy.

**THE SPECIAL COMMITTEE'S FINDINGS RENDER THE ENTIRE BOARD INTERESTED**

95.    On November 15, 2021, the Company announced that it was creating the

Special Committee to investigate allegations of inaccurate disclosures. On February 1, 2022, the

Company announced the results of the Special Committee's investigation, including, among other

things, certain remedial measures that included Defendant Breitfeld's pay being cut and Defendant

Krolicki stepping down as Chairman of the Board. As such, it appears that these defendants were

directly implicated in the Special Committee's investigation and the false and misleading

statement complained of, such that they are unable to disinterestedly consider the allegations

complained of herein.

96.    However, the remedial actions did not include any litigation against any of the

alleged wrongdoers to recover for the harm suffered by the Company. These wrongdoers include

Defendant Jia and Defendant Wang, who is the nephew of Defendant Jia, serves on the FF Global

Executive Committee, and was Director and Vice President of Legacy FF during the Business

Combination. Accordingly, the fact that the Board failed to initiate litigation to recover on the

Company's behalf against these wrongdoers, demonstrates Defendant Jia's domination and control

over the Board, rendering demand futile. Indeed, the Report confirms Defendant Jia's control of

the Board, stating Defendant "Jia still controls key spending decisions at FFIE through the FF

Global Executive Committee. Because of him, FFIE's USD accounts in China have been frozen

by regulators. In a lawsuit against FFIE, the company's former General Counsel Hong Liu claimed

that a Jia "clique" controlled the company regardless of legal commitments." Accordingly, demand on the Board is futile.

## FIRST CLAIM

### AGAINST FELDMAN AND J. VOGEL FOR VIOLATIONS OF

### SECTION 14(A) OF THE EXCHANGE ACT

97.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

98.    Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1), provides: "It shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title [15 U.S.C. § 78l]."

99.    Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

100.    Here, the Proxy Statement failed to disclose that: (1) the Company had assets in China frozen by courts, (2) a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) the Company's cars were not as close to production as the Company claimed; (4) as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) as a result of

the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

101.    The misrepresentations and omissions were material to Plaintiff in voting on the matters set forth for stockholder determination in the Proxy Statement, including but not limited to the election of certain defendants as directors.

102.    Specifically, as a result of the material misstatements and omissions contained in the Proxy Statement, Company stockholders elected Defendants Aydt, Breitfeld, Krolicki, J. Vogel, Ye, Goh, Liu, Swenson, and S. Vogel to the Board, each of whom who had breached their fiduciary duties to the Company. Furthermore, as a result of the material misstatements and omissions in the Proxy Statement, Company stockholders approved the Business Combination.

103.    The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statement.

104.    Plaintiff, on behalf of Faraday, has no adequate remedy at law

## SECOND CLAIM

### AGAINST THE INDIVIDUAL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES

105.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

106.    Each Individual Defendant owed to the Company the duty to exercise candor, good faith, and loyalty in the management and administration of Faraday's business and affairs.

107.    Each of the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

108.    The Individual Defendants' conduct set forth herein was due to their intentional or reckless breach of the fiduciary duties they owed to the Company, as alleged herein. The Individual

Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Faraday.

109.   In breach of their fiduciary duties owed to Faraday, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and/or misleading statements and/or omissions of material fact that failed to disclose, *inter alia*, that: (1) the Company had assets in China frozen by courts, (2) a significant percentage of its deposits for future deliveries were attributable to a single undisclosed affiliate; (3) the Company's cars were not as close to production as the Company claimed; (4) as a result of previously issued statements that were misleading and/or inaccurate, Faraday Future could not timely file its quarterly report; and (5) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

110.   In further breach of their fiduciary duties, the Individual Defendants failed to correct and/or caused the Company to fail to correct the false and/or misleading statements and/or omissions of material fact, which renders them personally liable to the Company for breaching their fiduciary duties. Lastly, the Individual Defendants breached their fiduciary duties by causing the sham Business Combination which was entered into to unjustly enrich Company insiders, particularly Defendant Jia, at the expense of the Company's public stockholders.

111.   The Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements and representations. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such material misrepresentations and  omissions

were committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Faraday's securities.

112.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent scheme set forth herein and had failed to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent scheme set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent scheme and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct  was  committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Faraday's securities. The Individual Defendants, in good faith, should have taken appropriate action to correct the scheme alleged herein and to prevent it from continuing to occur.

113.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

114.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Faraday has sustained and continues to sustain significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

115.    Plaintiff on behalf of Faraday has no adequate remedy at law.

## THIRD CLAIM

### AGAINST DEFENDANTS BREITFELD, FELDMAN, GLASMAN, JIA, AND J. VOGEL FOR CONTRIBUTION UNDER SECTION 10(b) AND 21D OF THE EXCHANGE ACT

116.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

117.    Faraday and Defendants Breitfeld, Feldman, Glasman, J. Vogel, and Jia are named as defendants in the Securities Class Action, which asserts claims under the federal securities laws for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations of the federal securities laws, the Company's liability will be in whole or in part due to Defendants Breitfeld's, Feldman's, Glasman's, Jia's, and J. Vogel's willful and/or reckless violations of their obligations as officers and/or directors of the Company.

118.    Defendants Breitfeld, Feldman, Glasman, Jia, and J. Vogel, because of their positions of control and authority as officers and/or directors of the Company, respectively, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts complained of herein and in the Securities Class Action.

119.    Accordingly, Defendants Breitfeld, Feldman, Glasman, Jia, and J. Vogel are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

120.    As such, Faraday is entitled to receive all appropriate contribution or indemnification from Defendants Breitfeld, Feldman, Glasman, Jia, and J. Vogel.

## FOURTH CLAIM

### AGAINST DEFENDANT JIA FOR UNJUST ENRICHMENT

121.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

122.    Defendant Jia benefitted financially from the improper conduct that was unjust in light of the Individual Defendants' bad faith conduct. Specifically, Defendant Jia benefited from

the sham Business Combination that was done for the purpose of enriching him, at the expense of the Company's public stockholders.

123.     Plaintiff, as a stockholder and a representative of FF, seeks restitution from Defendant Jia and seeks an order from this Court disgorging all profits obtained by Defendant Jia due to his wrongful conduct and breach of their fiduciary and contractual duties.

124.     Plaintiff on behalf of FF has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

A.     Declaring that Plaintiff may maintain this action on behalf of Faraday, and that Plaintiff is an adequate representative of the Company;

B.     Declaring that the Individual Defendants have breached their fiduciary duties to Faraday and committed other violations of law;

C.     Determining and awarding to Faraday the damages sustained by it as a result of the violations set forth above from each of the Individual Defendants, jointly and severally, together with pre-judgment and post-judgment interest thereon;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: April 25, 2022

**RIGRODSKY LAW, P.A.**

*/s/ Gina M. Serra*
Gina M. Serra (#5387)
Herbert W. Mondros (#3308)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: gms@rl-legal.com
　　　hwm@rl-legal.com

*Liaison Counsel for Plaintiff*

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Marion C. Passmore
580 California Street, Suite 1200
Telephone: (212) 308-1869
Facsimile: (212) 214-0506
Email: fortunato@bespc.com
　　　passmore@bespc.com

**HYNES & HERNANDEZ, LLC**
Michael J. Hynes
Ligaya T. Hernandez
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Telephone: (484) 875-3116
Facsimile: (914) 752-3041
Email: mhynes@hh-lawfirm.com
　　　lhernandez@hh-lawfirm.com

*Attorneys for Plaintiff*